Jean W. EAGLESON, Personal Representative, Estate of Lydia Wilkinson Viets, Deceased, Defendant-Appellant,

v.

Percy VIETS, Claimant-Appellee.

No. 1–382A65.

Court of Appeals of Indiana, First District.

Dec. 28, 1982.

Francis E. Knowles, Mount Vernon, for defendant-appellant.

Charles L. Berger, Sheila M. Corcoran, Evansville, for claimant-appellee.

NEAL, Judge.

## STATEMENT OF THE CASE

Defendant-appellant Jean W. Eagleson (Eagleson), personal representative to the estate of Lydia Wilkinson Viets, Deceased (Decedent), appeals from a decree entered in the Posey Circuit Court sustaining claimant-appellee Percy Viets' (Husband) objection to the Final Accounting and distributing to the Husband a surviving spouse allowance of $8,500 as provided by Ind.Code 29–1–4–1.

We affirm in part and remand.

## STATEMENT OF THE FACTS

The Decedent died testate on June 25, 1979, and Eagleson, upon filing the Final Report in the administration of the decedent's estate, did not distribute to the Husband the survivor's allowance. The terms and provisions of the Decedent's Last Will and Testament (Will) signed July 23, 1971, read in pertinent part as follows:

### "ITEM II.

I give, devise and bequeath all property which I may own at the time of my death, or in which I may own an interest, whether the same be real or personal and wherever located, to my children, to-wit: JEAN EAGLESON, WILLIAM C. WILKINSON, HELEN ANDERSON, ERMAL WILKINSON, JR., MARY LEE NIX, PHYLLIS WERRY, NANCY JOHNSON, and JOHN G. WILKINSON, the same to be taken by them in fee simple for their own use forever.

### ITEM III.

In the event that I am not survived by one or more of my said children, then I direct that their share of my estate shall be taken by his or her descendants, share and share alike, in fee simple for their own use forever. If the deceased child does not have descendants, then his or her share shall be taken by my surviving children, share and share alike, in fee simple for their own use forever."

Prior to their marriage on August 14, 1971, the Decedent and Husband both signed a document entitled "Articles of Agreement On Contemplation of Marriage"

(antenuptial agreement) on July 26, 1971, which in relevant part provided:

"For as long as he [Husband] shall live in the property he shall maintain the same, and pay all taxes and insurance owed thereon or levied against the property. Other than this right, the said Percy J. Viets shall not claim any right to any other property owned by the said Lydia Wilkinson at the time of their marriage, and shall not claim or hold any interest therein by virtue of any laws of descent or by virtue of his status as surviving widower, and shall not contest any will the said Lydia Wilkinson might leave, even though it may contain no provision therein for him."

On August 28, 1980, Eagleson filed her Final Report which omitted the survivor's allowance. Subsequently, the Husband filed his objection to the Final Report since it did not provide for the survivor's allowance. After hearing oral arguments and considering the briefs of the parties, the trial court sustained the Husband's objection, finding that the antenuptial agreement only prohibited the Husband "from claiming his statutory survivor's allowance, as provided in I.C. 29–1–4–1 from property owned by the decedent prior to the date of her marriage to the Petitioner." The trial court further found that the antenuptial agreement does not prohibit the Husband from claiming the $8,500 allowance "from property acquired by said decedent after the date of her marriage to the Petitioner[.]" Without further evidence to identify and value any after-acquired property, the trial court ordered Eagleson to pay the Husband $8,500, and Eagleson brought this appeal.

## ISSUES

Eagleson presents two issues for review which we restate as follows:

I. Whether the trial court erred in finding that the Husband was entitled to the survivor's allowance as provided under Ind.Code 29–1–4–1; and

II. Whether the trial court erred in ordering Eagleson to pay $8,500 to the Husband without first hearing evidence on the existence of any after-acquired property.

## DISCUSSION AND DECISION

*Issue I. Survivor's allowance*

Eagleson argues that because both the antenuptial agreement and the Will were signed within three days of each other, the two instruments must be construed together to form the Decedent's Last Will and Testament. By her Will, the Decedent expressly devised all her personal and real property to her children or their descendants, leaving nothing to her Husband. Eagleson contends it was the Decedent's clear intent that her Husband receive *only* a life estate in the marital abode and the income from the eighteen acres of farmland adjacent to the house, as provided in the antenuptial agreement. Therefore, Eagleson concludes, the Husband is not entitled to the $8,500 survivor's allowance.

Eagleson cites *In re the Estate of Ringel,* (1981) Ind.App., 426 N.E.2d 696, as approving of the rule which denies the survivor's allowance when payment of it would defeat the intention of the testator.

In *Ringel,* the trial court denied the husband's objection to the final accounting, disallowing the survivor's allowance. The trial court had found that the husband waived his right to the survivor's allowance by electing to take under the will. Upon reversing, the Court of Appeals stated that only if it clearly appeared from the will that the testator intended the provision therein to be in lieu of the survivor's statutory rights, would the surviving spouse waive his statutory rights by taking under the will. Otherwise, the surviving spouse has a right to the statutory allowance when taking under the will. *Id.* Thus whether the testator intended for the provisions of the will to be in lieu of the allowance must be determined by the terms of the will.

▮ We must first clarify of which documents the Decedent's Will consisted. With-

out authority, Eagleson argues that the antenuptial agreement must be considered as part of the Decedent's Will since it was executed practically simultaneous to the Will itself. We cannot agree.

■ If we were to construe the antenuptial agreement as testamentary in character, it is invalid because it is not executed in conformity with the statute prescribing the formalities of a will. *Oldenburg v. Baird,* (1900) 26 Ind.App. 379, 58 N.E. 1073. While we realize that no formality is required in making antenuptial contracts and such contracts are given liberal rather than strict construction, *Estate of Gillilan v. Estate of Gillilan,* (1980) Ind.App., 406 N.E.2d 981, the antenuptial agreement could not properly have been admitted to probate. *See Estate of Cameron v. Kuster,* (1968) 142 Ind.App. 645, 236 N.E.2d 626. The antenuptial agreement contemplates performance, has no subscribing witnesses and is not certified as the Decedent's Last Will. Further, the agreement was not simultaneously executed with the Decedent's Will and is not incorporated by reference or otherwise in the Decedent's Will. Clearly the antenuptial agreement and Will are separate documents which were not intended to be read in conjunction with one another to form the Decedent's Last Will and Testament.

■ We now turn to Eagleson's contention that the Decedent and the Husband, upon entering into the antenuptial agreement, agreed not to contest the Decedent's Will. We recognize that antenuptial contracts entered into between adults in contemplation of marriage are favored by the law, *Estate of Gillilan, supra;* however, we must point out that any action by a surviving spouse to obtain a survivor's allowance as provided under I.C. 29–1–4–1 does not amount to a will contest, but is a statutory right. Ind.Code 29–1–3–7, in relevant part provides:

"The surviving spouse is not entitled to take any share against the will by virtue of the fact that the testator made no provisions for him therein, except as he shall elect pursuant to IC 29–1. By taking under the will or consenting thereto, he does not waive his right to the allowance, unless it clearly appears from the will that the provision therein made for him was intended to be in lieu of that right."

Under this section of the probate code, the survivor's allowance may be denied only where the surviving spouse takes under the will and where the will shows the testator clearly intended that the provision for the surviving spouse was to be in lieu of the allowance. Neither of the above exceptions exists in the present case, and therefore the trial court correctly found the Husband entitled to the survivor's allowance.

*Issue II. Evidentiary hearing*

■ Eagleson next contends that if the Husband is entitled to the survivor's allowance, the money must come from property acquired by the Decedent after their marriage. The trial court, Eagleson continues, erroneously ruled to allow the Husband an $8,500 allowance without first hearing evidence to determine if there were any after-acquired assets from which to pay the survivor's allowance. We agree. The antenuptial agreement only prohibits the Husband from claiming any right to property owned by the Decedent at the time of their marriage and does not forbid him from reaching after-acquired property. The trial court held a pre-trial hearing on December 19, 1980, in which two issues were discussed: the Husband's right to a survivor's allowance and the evidence of any after-acquired property. In the course of the hearing, counsel for Eagleson notified the court of the need to have an evidentiary hearing at a later date to determine the existence of after-acquired property. It was further agreed between the court and counsel for both sides to resolve only the issue of the survivor's allowance at the present hearing. However, the trial court never held a later hearing or trial on the matter of after-acquired property and ordered Eagleson to pay the Husband $8,500. In view of the antenuptial agreement, the survivor's allowance can be recovered only from property of the Decedent acquired after their marriage. Despite the inheritance tax re-

turns, appraiser's reports and Final Accounting which all appear in the record, we are unable to determine the existence and value of any after-acquired property of the Decedent, and therefore, we remand this cause to the trial court to hold a further evidentiary hearing on the matter.

Judgment affirmed in part and remanded.

RATLIFF, P.J., and ROBERTSON, J., concur.